Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMIN AMERSI, derivatively on behalf of TANDEM DIABETES CARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOHN F. SHERIDAN, LEIGH A. VOSSELLER, BRIAN B. HANSEN, REBECCA B. ROBERTSON, DICK P. ALLEN, KIM D. BLICKENSTAFF, MYOUNG CHA, PEYTON R. HOWELL, JOAO PAULO FALCAO MALAGUEIRA, KATHLEEN MCGRODDY-GOETZ, RAJWANT S. SODHI, and CHRISTOPHER J. TWOMEY, <br><br> Defendants, <br><br> and <br><br> TANDEM DIABETES CARE, INC., <br><br> Nominal Defendant. | Case No.: **'24 CV 0726 DMS MSB** <br><br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff Amin Amersi ("Plaintiff"), by and through Plaintiff's undersigned attorneys, derivatively on behalf of Nominal Defendant Tandem Diabetes Care, Inc. ("Tandem" or the "Company"), brings this Verified Shareholder Derivative Complaint against John F. Sheridan ("Sheridan"), Leigh A. Vosseller ("Vosseller"), Brian B. Hansen ("Hansen"), Rebecca B. Robertson ("Robertson"), Dick P. Allen ("Allen"), Kim D. Blickenstaff ("Blickenstaff"), Myoung Cha ("Cha"), Peyton R. Howell ("Howell"), Joao Paulo Falcao Malagueira ("Malagueira"), Kathleen McGroddy-Goetz ("McGroddy-Goetz"), Rajwant S. Sodhi ("Sodhi"), and Christopher J. Twomey ("Twomey") (collectively, the "Individual Defendants" and, together with Tandem, "Defendants") for their breaches of fiduciary duties, and other misconduct that resulted in material damage to the Company and its shareholders.

These allegations are made upon personal knowledge with respect to Plaintiff and, as to all other matters, upon information and belief based upon the investigation and analysis by Plaintiff's counsel, including, among other things, a review of the Company's press releases and public filings with the United States Securities and Exchange Commission ("SEC"), corporate governance documents published on the Company's website, transcripts of Tandem conference calls with financial analysts and investors, news reports, financial analyst reports, the complaint filed in a securities class action lawsuit against the Company, and other publicly available information about the

Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought on behalf of Tandem against certain officers and members of Tandem's Board of Directors (the "Board") for wrongdoing committed between February 24, 2021 and November 2, 2023 (the "Relevant Period").

2.     Tandem is a medical device manufacturer that develops medical technologies for the treatment of diabetes. Specifically, Tandem makes and sells insulin pumps. Customer retention and satisfaction is key to the Company's growth. Indeed, in the Company's public filings, Tandem, its directors, and officers acknowledge that a "key to maintaining and growing our revenue is the retention of a high percentage of our customers."

3.     On February 22, 2022, Tandem issued a press release that reported its financial results for the fourth quarter of 2021 and full year 2021, including 25% year-over-year revenue growth and a 15% increase in insulin pump shipments year-over-year. Tandem also provided guidance regarding its expectations for 2022, projecting sales in the range of $845 million to $860 million, and representing annual sales growth of 20% to 23%. Then, during a May 4, 2022 earnings call, Tandem increased its guidance, with

Tandem's Chief Financial Officer ("CFO") Defendant Vosseller representing that the Company was poised to "outperform expectations" and meet profitability goals.

4.      However, in an August 3, 2022 press release, Tandem disclosed that the guidance provided in February 2022 would not be met. The Company cited inflation, pandemic-related factors, and competition as the reasons the projections would not be met. During an earnings call that same day, Defendant Sheridan, the Company's Chief Executive Officer ("CEO") and Defendant Vosseller downplayed these "headwinds," representing that the Company would quickly overcome these challenges, that the economic challenges were already factored into the Company's guidance, and that the effects of the pandemic were waning.

5.      Then, on November 2, 2022, the Company issued a press release announcing new, downwardly revised guidance for 2022, projecting sales of only $800 to $805 million, down from the range of $835 to $845 million that had been publicly provided only three months earlier. During an earnings call that same day, Defendant Sheridan pinned the reversal on pandemic-related pressures, an intensified "competitive environment," and economic conditions, including inflation and the threat of recession, factors the Company had previously downplayed and assured investors were merely temporary and waning.

6.      On the news of this disclosure, the Company's stock dropped over 30% to close at $35.72 per share on November 3, 2022, a 30.4% decline from the Company's

$51.34 per share price on November 2, 2022. In addition, financial analysts cut their price targets for Tandem's stock. In subsequent press releases and SEC filings throughout 2023, Tandem continued to negatively revise its 2023 financial guidance based on competitive pressures.

7.     In light of the Individual Defendants' misconduct, the Company, as well as Defendants Sheridan, Vosseller, and Hansen, were named as defendants in a federal securities fraud class action lawsuit pending in the United States District Court for the Southern District of California, captioned *Lowe v. Tandem Diabetes Care, Inc., et al.*, 3:22-cv-01657 (S.D. Cal.) (the "Securities Class Action.") The Securities Class Action has further subjected Tandem to the need to undertake internal investigations and the need to implement adequate internal controls, as well as exposed the Company to massive class-wide liability.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. § 78j(b)), Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

10. This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

11. The Court has jurisdiction over each of the Defendants because Tandem maintains its headquarters and does substantial business in this District. As such, each Defendant is an individual or a corporation with minimum contacts with this District to justify the exercise of jurisdiction over them.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, one or more of the Defendants either resides or maintains executive offices in this District, Defendants have conducted business in this District, Defendants' actions have had an effect in this District, and Tandem is headquartered in this District.

## **PARTIES**

13. Plaintiff is a current shareholder of Tandem common stock. Plaintiff has continuously held Tandem common stock at all relevant times.

14. Nominal Defendant Tandem is incorporated under the laws of Delaware with its principal executive offices located at 12400 High Bluff Drive, San Diego, CA

Verified Shareholder Derivative Complaint

92130. Tandem's common shares trade on the Nasdaq Stock Market under the ticker symbol "TNDM."

15.     Defendant Sheridan is the President and CEO of Tandem and has served as a director since 2019. According to the proxy statement filed on Schedule 14A with the SEC on April 9, 2024 (the "2023 Proxy Statement"), as of March 14, 2024, Defendant Sheridan beneficially owned 29,888 Tandem shares. In 2023, Defendant Sheridan received $4,651,603 in total compensation from the Company.

16.     Defendant Vosseller has served as Executive Vice President, CFO, and Treasurer of Tandem since June 2018. Defendant Vosseller joined Tandem in 2013 as Vice President of Finance. As of March 14, 2024, Defendant Vosseller beneficially owned 24,800 Tandem shares. In 2023, Defendant Vosseller received $1,251,109 in total compensation from the Company.

17.     Defendant Hansen has served as Executive Vice President and CCO of Tandem since February 2016. As of March 14, 2024, Defendant Hansen beneficially owned 13,290 Tandem shares. In 2023, Defendant Hansen received $1,269,468 in total compensation from the Company.

18.     Defendant Robertson has served as a Tandem director since 2019, Chair of the Board since 2023, and is a member of the Compensation Committee. As of March 14, 2024, Defendant Robertson beneficially owned 4,962 Tandem shares. In 2023, Defendant Robertson received $222,784 in total compensation from the Company.

19.     Defendant Allen has served as a Tandem director since 2007, is Chair of the Nominating and Corporate Governance Committee, and is a member of the Audit Committee. Defendant Allen also served as Chair of the Board from August 2007 to January 2013 and from January 2016 to February 2019. As of March 14, 2024, Defendant Allen beneficially owned 47,854 Tandem shares. In 2023, Defendant Allen received $214,667 in total compensation from the Company.

20.     Defendant Blickenstaff is the former Chair, Executive Chair, President and CEO of Tandem, and has served as a director since 2007. As of March 14, 2024, Defendant Blickenstaff beneficially owned 218,604 Tandem shares. In 2023, Defendant Blickenstaff received $198,783 in total compensation from the Company.

21.     Defendant Cha has served as a Tandem director since 2022 and is a member of the Compensation Committee. As of March 14, 2024, Defendant Cha beneficially owned 1,749 Tandem shares. In 2023, Defendant Cha received $176,552 in total compensation from the Company.

22.     Defendant Howell has served as a Tandem director since 2020 and is Chair of the Compensation Committee. As of March 14, 2024, Defendant Howell beneficially owned 12,256 Tandem shares. In 2023, Defendant Howell received $190,283 in total compensation from the Company.

23.     Defendant Malagueira has served as a Tandem director since 2022 and is a member of the Audit Committee. As of March 14, 2024, Defendant Malagueira

beneficially owned 1,749 Tandem shares. In 2023, Defendant Malagueira received $177,552 in total compensation from the Company.

24.     Defendant McGroddy-Goetz has served as a Tandem director since 2022 and is a member of the Nominating and Corporate Governance Committee and the Privacy and Security Subcommittee. As of March 14, 2024, Defendant McGroddy-Goetz beneficially owned 9,032 Tandem shares. In 2023, Defendant McGroddy-Goetz received $189,250 in total compensation from the Company.

25.     Defendant Sodhi has served as a Tandem director since 2021 and is a member of the Nominating and Corporate Governance Committee and the Privacy and Security Subcommittee. As of March 14, 2024, Defendant Sodhi beneficially owned 6,700 Tandem shares. In 2023, Defendant Sodhi received $189,250 in total compensation from the Company.

26.     Defendant Twomey has served as a Tandem director since 2013 and is Chair of the Audit Committee. As of March 14, 2024, Defendant Twomey beneficially owned 19,534 Tandem shares. In 2023, Defendant Twomey received $200,950 in total compensation from the Company.

## **FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

27.     By reason of their positions as officers, directors, and/or fiduciaries of Tandem and because of their ability to control the business and corporate affairs of Tandem, the Individual Defendants owed the Company and its shareholders the fiduciary

obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders.

28.   Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's operations, finances, financial condition, and present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

29.   The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with the Company, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, sales and marketing practices, and improper representations of the Company.

30.    To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a)    ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)    conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)    remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal

and state securities laws;

(e)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f)     ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

31.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

## THE CODE OF CONDUCT

32.     Tandem's Code of Business Conduct and Ethics for Employees and Directors (the "Code of Conduct") imposes a responsibility on all Tandem employees and the Board "to foster a culture of fairness, honesty, and accountability within the Company."

33.     The Code of Conduct requires the reporting of any violation of the Code of Conduct to an immediate supervisor or a Compliance Officer.

34.     The Code of Conduct requires that all employees and the Board comply with "all applicable laws, rules, and regulations, as well as the listing standards of the stock exchange on which the Company's securities are then-listed for trading."

35.     The Code of Conduct prohibits the making of "false or misleading statements about the Company or its competitors" which is "inconsistent with the Company's intentions to have a reputation for integrity, and potentially harmful to the Company's business." The Code of Conduct prohibits all employees and the Board from taking "unfair advantage of anyone through misuse of confidential information, misrepresentation of material facts or any other unfair business practice."

36.     The Code of Conduct emphasizes the maintenance of accurate and reliable books, records and financial statements:

> The integrity, reliability and accuracy of the Company's books, records, and financial statements is fundamental to the Company's continued future business success. No [employee or director] may cause the Company to enter into a transaction with the intent to document or record it in a deceptive or unlawful manner. In addition, no [employee or director] may create any false or artificial documentation or book entry for any transaction entered into by the Company. Similarly, officers and [employees] who have the responsibility for accounting and financial reporting matters have a responsibility to accurately record all funds, assets, and transactions in the Company's books and records.

37.     The Code of Conduct emphasizes the development and maintenance of disclosure controls and procedures: "The Company's disclosure controls and procedures

are designed to help ensure that the Company's public disclosures are full, fair and accurate, that they fairly present its financial condition and results of operations, and that they are timely and understandable."

38.    The Code of Conduct requires the reporting of "questionable accounting or auditing conduct or practices" directly to the Audit Committee or the Compliance Officer.

## THE AUDIT COMMITTEE CHARTER

39.    The Audit Committee Charter sets forth additional duties for members of the Audit Committee and provides that members are obligated to assist the Board in its oversight of, *inter alia*: internal audit, financial reporting and legal matters; the integrity of the Company's financial statements; and the Company's compliance with legal, regulatory, and public disclosure requirements.

40.    The Audit Committee members are required to, among other things:

- Review and discuss the Company's overall audit plan (both internal and external) with the independent auditors, management and the internal audit team (to the extent applicable) that is responsible for preparing the Company's financial statements.
- Review and discuss with management the Company's quarterly and annual financial statements and any report or opinion by the independent auditors, prior to distribution to the public or filing with the SEC.
- Review and discuss with management earnings press releases and whether and to what extent earnings guidance and similar information shall be disclosed publicly by the Company, including non-GAAP measures.
- Review and discuss with management and the independent auditors, prior to the filing of the Company's Quarterly Reports on Forms 10-Q and Annual Report on Forms 10-K, the Company's quarterly and annual

financial statements and the Company's related disclosures under "Management's Discussion and Analysis of the Financial Condition and Results of Operations."

- Review and discuss with management and the independent auditors, prior to the filing of the Company's Quarterly Reports on Forms 10-Q and Annual Report on Forms 10-K, such issues as may be brought to the Committee's attention by the independent auditors and any significant financial reporting issues.

- Review and discuss any alleged fraud involving management or any employee of the Company with a significant role in the Company's internal controls over financial reporting that are disclosed to the Audit Committee.

- Oversee management's design and maintenance of the Company's internal control over financial reporting and disclosure controls and procedures … including reviewing and discussing with management, and the independent auditor, the certification and reports of management and the independent auditor required in the Company's Quarterly Reports on Form 10-Q and Annual Report on Form 10-K concerning the Company's internal control over financial reporting and disclosure controls and procedures, the adequacy of such controls, and any remedial steps being undertaken to address any material weaknesses or significant deficiencies in internal control over financial reporting.

- Review and discuss with management and, as appropriate, the independent auditors the Company's risk management and risk assessment guidelines and policies related to the Company's accounting and financial risk exposures and the steps taken by management to monitor and control these exposures.

## THE NOMINATING AND CORPORATE GOVERNANCE COMMITTEE CHARTER

41.     Tandem's Nominating and Corporate Governance Committee Charter sets forth additional duties for committee members, including obligations relating to overseeing the development and adequacy of the Corporate Governance Guidelines including, at least annually, reviewing and recommending to the Board changes, if any, to "the Company's governance and compliance practices generally, and the Company's

policies, procedures and controls for ensuring compliance, as established by management and the Board, including without limitation the Company's Code of Business Conduct and Ethics for Employees and Directors, Code of Business Conduct and Ethics for Chief Executive Officer and Other Senior Financial Officers, Insider Trading Policy, [and] Related Party Transaction Policy and Communication Policy ...."

42.     Members of the Nominating and Corporate Governance Committee are also charged with the following duties, among others:

- Oversee implementation by management of the Company's policies, procedures, and practices for ensuring compliance with applicable legal and regulatory requirements, as well as codes, programs and policies as established by management and the Board, including without limitation the Governance and Compliance Policies, and recommend any proposed changes to the Governance and Compliance Policies to the Board.
- Meet with, and receive and review reports from the Company's legal counsel concerning compliance matters (other than those relating to financial matters, which are within the purview of the Audit Committee), including without limitation (i) complaints received from internal and external sources, such as the Company's compliance hotline, (ii) industry practices and trends, and (iii) enhancements to the Company's governance and compliance practices generally, and the Governance and Compliance Policies specifically.
- Promptly refer all compliance matters regarding financial matters to the Audit Committee, and with respect to all other significant compliance matters, promptly notify the Chair of the Audit Committee of the initiation of any such significant compliance matters and keep the Chair of the Audit Committee reasonably apprised of the status of any such significant compliance matters.
- Authorize or oversee investigations into any matters within the Committee's scope of responsibility as described in the Nominating and Corporate Governance Committee Charter.

## SUBSTANTIVE ALLEGATIONS

43.     The Relevant Period begins on February 24, 2021, when Tandem filed its Annual Report on Form 10-K with the SEC for the fiscal year ended December 31, 2020 (the "2020 10-K"). The 2020 10-K was signed by Defendants Sheridan, Allen, Blickenstaff, Howell, Robertson, McGroddy-Goetz, Sodhi, and Twomey.

44.     The 2020 10-K contained the following acknowledgement from Defendants Sheridan, Allen, Blickenstaff, Howell, Robertson, McGroddy-Goetz, Sodhi, and Twomey of the material risks in connection with customer retention in the face of the introduction of competitive products:

> A key to maintaining and growing our revenue is the retention of a high percentage of our customers due to the potentially significant revenue generated from ongoing purchases of disposable insulin cartridges and other supplies. In addition, our pumps are designed and tested to remain effective for at least four years and a satisfied customer may consider purchasing another product from us when the time comes to replace the pump. We have developed retention programs aimed at our customers, their caregivers and healthcare providers, which include training specific to our products, ongoing support by our sales and clinical employees, and technical support and customer service. Demand for our products from our existing customers could decline or could fail to increase in line with our projections as a result of a number of factors, including the introduction of competitive products…

45.     The 2020 10-K also contained the following acknowledgment from Defendants Sheridan, Allen, Blickenstaff, Howell, Robertson, McGroddy-Goetz, Sodhi, and Twomey of the material risks in connection with operating in a competitive environment:

The medical device industry is intensely competitive, subject to rapid change and highly sensitive to the introduction of new products, treatment techniques or technologies, as well as other activities of industry participants. We believe our products compete, and will continue to compete, directly with a number of traditional insulin pumps, as well as other methods for the treatment of diabetes, including multiple daily injection (MDI) therapy. Our primary competitors are major medical device companies that are publicly traded companies or divisions or subsidiaries of publicly traded companies, including Insulet and Medtronic MiniMed.

46.     The 2020 10-K further contained the following acknowledgement from Defendants Sheridan, Allen, Blickenstaff, Howell, Robertson, McGroddy-Goetz, Sodhi, and Twomey of the competitive advantage enjoyed by the Company's competitors due to offering features not currently employed by Tandem's products and the material risks posed thereby:

Our key competitors, most notably Medtronic, enjoy several competitive advantages over us…. In some instances, our competitors offer products that include features that we do not currently offer. For instance, Insulet offers an insulin pump with a tubeless delivery system that does not utilize an infusion set and Medtronic recently announced the acquisition of a connected insulin pen delivery device.

47.     The 2020 10-K contained the following acknowledgement from Defendants Sheridan, Allen, Blickenstaff, Howell, Robertson, McGroddy-Goetz, Sodhi, and Twomey of the material risks in connection with staffing shortages due to the pandemic:

The COVID-19 global pandemic, or other similar outbreaks or epidemics, may have an adverse effect on the overall productivity of our workforce, and we expect to continue to take extraordinary measures to protect the health and safety of our employees and our business partners and reduce the risk of disruptions to our operations.

48.     All subsequent Quarterly Reports and Annual Reports throughout 2021 and 2022, including the Company's Annual Report on Form 10-K filed with the SEC on February 22, 2022, for the period ended December 31, 2021 (the "2021 10-K"), which was signed by Defendants Sheridan, Vosseller, Allen, Blickenstaff, Howell, Robertson, McGroddy-Goetz, Sodhi, and Twomey, contained substantially similar statements acknowledging the risks in connection with customer retention, the competitive landscape in the insulin pump industry, and the effects the pandemic had on staffing.

49.     On February 22, 2022, Tandem filed with the SEC a Current Report on Form 8-K attaching a press release announcing fourth quarter and full year 2021 financial results, including $210 million in revenue for the fourth quarter, representing 25% year-over-year growth. Tandem also reported a 15% year-over-year increase in pump shipments and a renewal of 60% of the Company's approximately 65,000 pump warranties that expired in 2021. Tandem provided 2022 sales guidance in the range of $845 million to $860 million, reflecting an adjusted EBITDA of 14% to 15% of sales.

50.     On May 4, 2022, Tandem filed with the SEC a Current Report on Form 8-K attaching a press release announcing its first quarter 2022 financial results and providing 2022 financial guidance including expected sales in the range of $850 million to $865 million, reflecting annual sales growth of 21% to 23% year-over-year, and an expected gross margin of approximately 54%, reflecting an adjusted EBITDA of 14% to

15% of sales. The Company further reported revenue of $175.9 million and 12% growth in insulin pump shipments.

51.     On the same day, in a conference call with financial analysts and investors, Defendant Vosseller touted Tandem's "strong start" to 2022 and stated that "U.S. sales outperformed expectations, and we are on track with international sales and operational execution against our profitability goals." Defendant Vosseller also commented on the optimistic 2022 guidance, stating in part:

> As we look to the remainder of the year ahead, **we are increasing our 2022 worldwide sales expectations** to a range of $850 million to $865 million, reflecting a growth rate of 21% to 23%. This is based primarily on our strong Q1 results in the U.S., and so we have increased our U.S. sales guidance to a range of $635 million to $645 million and are reaffirming our [outside the U.S.] expectations of $215 million to $220 million. *[1]*

## THE TRUTH BEGINS TO EMERGE

52.     On August 3, 2022, Tandem filed a Current Report on Form 8-K with the SEC attaching a press release announcing second quarter 2022 financial results and revised full year 2022 guidance, including expected sales between $835 to $845 million, representing 19%-20% growth over the previous year. In the press release, the Company also revised its gross margin and adjusted EBITDA figures, with an expected gross margin of approximately 52%-53% compared to the prior guidance of 54%, reflecting an adjusted EBITDA of approximately 11% of sales, well below the prior guidance of 14% to 15% of sales.

---

[1] All emphasis is added unless otherwise noted.

53.     On the same day, in a conference call with financial analysts and investors, Defendant Sheridan touted the Company's exceptional performance in the second quarter despite "a more challenging operating environment compared to recent years" and Tandem's progress and ability "to navigate new headwinds to our business." Defendant Vosseller pointed to the Company's consistent record quarterly sales: "The past few years we've been able to consistently demonstrate record quarterly sales and we achieved this milestone once again in the second quarter. The fundamentals of our business remain intact." Defendant Vosseller stated that the Company was on track to reach its longer-term goals:

> ***We remain confident in our longer-term goals*** to reach an installed base of 1 million customers worldwide in 2027 and meaningfully expand our gross and operating margins despite the near-term headwinds. We are already nearly 40% of the way to our installed base target, satisfaction and demand for our t:slim X2 with Control-IQ remains high and our exciting R&D programs that are necessary to deliver on future growth ambitions remain on track.

54.     Further on the conference call, Defendant Sheridan noted that that the Company was anticipating the financial impact from the pandemic and working to "offset any of those financial implications":

> Sure. I think that, as we've noted over the last couple of quarters, we have seen COVID-related effects…. [W]e're actually revising this program and we're going to be rolling it out this quarter to try to offset any of those financial implications and potential effects on that—on those decisions, just to basically make it a lot easier for people to get past that concern over the finances.

55.     Defendant Vosseller confirmed that Tandem had factored in "pandemic and competitive-related" pressure into the financial guidance: "Turning to the outlook. Since the beginning of the year, we have factored pandemic and competitive-related pressure into our guidance based on what we have experienced historically. We feel that the results today are largely in line with those expectations." Defendant Vosseller later reiterated that Tandem was prepared to deal with the economic headwinds:

> So, what we factored in for the economic headwinds is that they basically persist through the end of the year, but we still anticipate that we'll begin to see that normal seasonal uptick into the fourth quarter. So, our goal is to have the enhanced programs ready to help push that uptick as we move into the back half of the (technical difficulty) in the next few months.

56.     Defendant Vosseller reassured that the reduction in guidance was entirely dependent on the recession and the Company had "good mitigations in place" to manage it:

> The guidance reduction was solely around [the recession]. We began to really see this at the very end of the second quarter and moving into the third quarter. So, it's something new that's obviously more difficult for us to predict, but we think we have good mitigations in place, and we'll continue to manage through it throughout the rest of the year.

57.     When a financial analyst questioned if Tandem was being over-confident in its guidance, Defendant Vosseller stated that the Company was "very confident" in its ability to achieve its guidance:

> We've learned how to navigate with the staffing shortages and the challenges in the HCP offices, and we expect to continue to improve on that as we look throughout the remainder of the year. The noise around the competitive launch, particularly right now is more temporary in nature.

*      *      *

And we expect that noise to start to dissipate in the next quarter or two as it becomes more widely available. The headwind with the economic environment is the one that we expect to continue and with our—some of our mitigation plans in place. And then again, just the normal pump seasonality, which will help drive people through the funnel as more and more people have met their deductibles. ***We feel confident that we can achieve that fourth quarter number …. So I'll start with the guidance part of it. We feel very confident in the number we put out there this year.***

58.     Defendant Vosseller also noted that "we don't see these economic headwinds as anything that would shift people's mindset to a different product …." and downplayed any "competitive dynamics." Sheridan emphasized that it was "macroeconomic factors" and "not the competitive issues" that were affecting the Company's sales.

59.     Financial analysts were quick to respond negatively to Tandem's abrupt revision of its optimistic guidance. Craig-Hallum Capital Group reported that the "tone and guidance change were the biggest surprise" of Tandem's earnings announcement. Craig-Hallum Capital Group analysts emphasized that they were "confounded" because when Tandem had issued 2022 guidance in the fourth quarter of 2021, the Company "noted that competitive noise was factored in the guidance" but the "2Q22's call featured competition much more than at the noise level." Citibank analysts reported that new insulin pump users in the United States were down approximately 5.6% due to "pressure from staffing shortages, and, later in the quarter, affordability, and economic headwinds."

On August 9, 2022, Wells Fargo downgraded the Company's stock from "Overweight" to "Underweight," citing new competitive threats.

60.     On September 8, 2022, Defendant Sheridan and Defendant Vosseller presented at the 2022 Wells Fargo Healthcare Conference. At the conference, they discussed the "headwinds" affecting Tandem's sales. Sheridan reassured "that now that we've exited August, we've seen a positive shift in the beginning of a momentum build that really confirms our assumptions in the guidance for the second half of the year." Sheridan also confirmed that Tandem had factored the pandemic and competitive challenges in its guidance and there "was no real surprise" how these factors impacted the Company.

61.     Defendant Vosseller noted that in determining the financial guidance, the Company had weighed the opportunities and risks and estimated that "over the next few quarters" the competitive pressure would start to "dissipate" and "wane."

62.     On September 13, 2022, Defendant Sheridan and Defendant Vosseller presented at the Baird 2022 Global Healthcare Conference. Defendant Sheridan confirmed again that the Company had seen "a positive shift" and "the beginning of the momentum build that lines up with the guidance that we gave during the [2Q] call." Sheridan discussed the new product of one of Tandem's chief competitors, Insulet Corporation, noting that it was a "good product" "but reviews have been mixed" and "the

level of competition and the effect we're seeing is in line with what our expectations were." Sheridan reiterated that "things will settle down in a quarter or [two]."

63.     On November 2, 2022, Tandem filed with the SEC a Current Report on Form 8-K attaching a press release announcing its third quarter 2022 financial results. The Company reported a GAAP net loss of $49.0 million, compared to net income of $5.8 million. Further, the Company revised its optimistic financial guidance for the year substantially, including reducing expected sales to $800 million to $805 million versus the previous guidance of $835 to $845 million. The revised sales numbers represented annual sales growth of only 14% to 15% year-over-year. Tandem also revised its guidance for adjusted EBITDA to approximately 7% to 8% of sales, compared to the prior guidance of 11% of sales.

64.     Despite these negative results and the market's skepticism, the Individual Defendants continued to issue false and misleading statements. During a November 2, 2022 earnings call with financial analysts and investors, Defendant Sheridan stated that the revised guidance was due to the lingering impact of the pandemic, the competitive market, and other economic factors, including the recession – all factors that the Company had previously represented would not impact the 2022 guidance:

> Similar to what we discussed in our last earnings call, we've largely been pressured by 3 dynamics that continue throughout Q3. First were the pandemic-related pressures that have fluctuated throughout the past 2 years. These include an array of things from COVID case rates to endocrinology office staffing shortages. Second was the competitive environment in the

United States. And third were the economic conditions, including inflation and the threat of recession.

To provide an update on each of these dynamics, the broader COVID-related pressures began escalating in Q3 of last year in all our markets. It's now a consistent factor when looking at the year-over-year comparison in an environment that we anticipate operating in for the foreseeable future. The second dynamic is the competitive environment in the U.S. This intensified across the year, in line with the competitor's scaling launch of a new AID algorithm, which is on a device form factor that we've competed with historically.

In surveying our sales management, the majority said the disruption associated with this launch is less than what we've experienced a few years ago when another competitive AID system launched. That being said, it creates noise in the market that we'll be navigating and managing for the few quarters.

\*       \*       \*

On the final market dynamic, the impact of the economic environment on customer purchasing behavior is primarily a U.S. phenomenon. This pressure is something that we saw build quickly at the end of Q2 and has remained steady.

65.     Defendant Vosseller stated: "Due to the change in our sales guidance, we now expect our 2022 gross margin to be approximately 52%, which was the lower end of our guidance range." Defendant Sheridan commented that the pressure on the Company's financials would continue for the "foreseeable future":

[T]hese 3 dynamics continue on for the foreseeable future. And as we indicated with our recalibration, it's very difficult to predict this. I mean we certainly are doing what we can to combat the noise from the competitive situation by promoting the strengths of our products.

\*       \*       \*

[I]t's difficult for us to actually isolate which of the 3—the factors that we described, the 3 market dynamics are getting worse or getting better.

66.     Defendant Vosseller agreed that the combination of the three factors made it difficult to predict what would happen going forward:

> I'm going to follow on to John's comments a little bit about the headwinds and the fact that it's really the combination of all of them together, which makes it so ***difficult and challenging to predict.*** And as we thought about the guidance in setting expectations going forward, rather than trying to factor in the rate that these will improve or the timing in which they'll improve, we've assumed consistent pressure continuing throughout the year and even as we think about entering 2023. So, in this case, what we said our expectations, we're [erring] more on the cautious side and then leaving the opportunity for [ASOs to] begin to dissipate as upside for us as we look forward.

67.     A financial analyst questioned Tandem's changed guidance, asking "what had changed" to "pull down expectations":

> So I'm just wondering, just given the environment, what really changed here in the last few weeks for you to pull down expectations, especially in the U.S. so much, both in Q4 and then and going forward? And what gives us the confidence that next year can even be 11% to 12% with all of these headwinds that you're now facing?

68.     Defendant Sheridan responded by admitting that the Company "didn't get it right", responding as follows:

> Thanks, Matt. I think that's some fair questions. We mentioned that back in the June, July time frame, we saw a soft month. And in August, we absolutely saw this change in the momentum build, which was in line with what we've seen historically for the end of the third quarter. Unfortunately, in September, we just didn't see that trend continue. We saw a continued pressure.
>
> I would say that we've tried to estimate the third quarter [to] take into account these 3 market dynamics, and we didn't get it right.

69.     Another financial analyst wondered how Tandem had missed its guidance by such a substantial amount, *i.e.*, $50 million: "[20]22 looks like it will come in over $50 million lower than your initial expectations. And I appreciate kind of the dynamics and the pressures you outlined there. But when you look back, what played out differently here? I'm still struggling a bit with this." Defendant Sheridan pinned the Company's abrupt reversal on a dramatic change in the economic environment:

> I mean, I think the thing that we didn't anticipate when we originally set guidance, Jayson, was the macro factors that we saw come in the latter part of the second quarter. Coming into the year, we definitely were anticipating the COVID pressures. We were definitely anticipating the competitive pressures. But I think that the economic environment changed dramatically, and I think people became a lot more sensitive to it.

70.     Following the announcement of the revised guidance and disappointing financial results, the Company's stock declined sharply, closing at $35.72 per share on November 3, 2022, a 30.4% decline from the Company's $51.34 per share price on November 2, 2022.

71.     On this news, several financial analysts slashed their price targets for Tandem. A financial analyst at Raymond James stated: "[W]e have been on the wrong side of TNDM this year, misjudging the impact of competition, and associated deceleration in revenue growth." Another financial analyst at Craig-Hallum remarked on Tandem's poor financial performance: "[T]here is no way to sugarcoat it, Q4 guidance is poor, and conditions worsened even following a Q2 report that left the Street concerned."

72.      On November 3, 2022, Citi Research issued a report about the revised guidance including the fact that it "surprised us (and others), despite commentary at the September meetings." The report noted: "Staffing, competitive pressures, and economic conditions allowed for August seasonality that did not translate to a September acceleration, nor normalized levels in October." The report concluded that "these pressures have had a steady impact on the business since the end of 2Q22, and management expects the pressure to remain constant through [the end of 2022]."

73.      Piper Sandler reported following the Q3 results that "[c]ompetition is hurting [Tandem]…along with some macro pressures *but we believe the former [competition] is more impactful than they are letting on."*

74.      On January 10, 2023, Tandem filed with a Current Report on Form 8-K with the SEC attaching a press release announcing its fourth quarter and full year 2022 financial results. In the press release, Tandem reported GAAP sales of approximately $802 million for 2022, at the low end of the revised guidance provide only a little more than two months earlier.

75.      On February 22, 2023, Tandem filed its Annual Report on Form 10-K filed with the SEC for the period ended December 31, 2022 (the "2022 10-K"). The 2022 10-K contained substantially similar risk acknowledgments as the 2020 10-K and 2021 10-K, noting the risks facing Tandem in connection with customer retention, the

competitive landscape in the insulin pump industry, and the effects the pandemic had on staffing.

76.     On May 3, 2023, Tandem filed with the SEC a Current Report on Form 8-K attaching a press release announcing its first quarter 2023 financial results. In the press release, Tandem reported a GAAP gross profit of $82.9 million, compared to $91.1 million year-over-year and a GAAP gross margin of 49%, compared to 52% in the first quarter of 2022. The Company further reported a GAAP operating loss of $127.8 million, or negative 75% of sales, compared to an operating loss of $15.3 million or negative 9% of sales, and a GAAP net loss of $123.9 million, compared to a net loss of $14.7 million.

77.     Tandem reaffirmed its 2023 guidance of non-GAAP sales in the range of $885 million to $900 million, representing annual sales growth of 10% to 12% compared to 2022, non-GAAP gross margin of approximately 52%, and an adjusted EBITDA margin of approximately 5% to 6% of sales.

78.     On the same day, in a conference call with financial analysts and investors, Defendant Hansen touted the Company's experience selling in a challenging environment:

> As we look at the broader commercial environment, the start to the year was largely consistent with what we've seen exiting 2022. While there were pressures associated with the competitor's new product launch in the United States, which created noise and delayed decision-making. The experience we've gained selling in this environment will benefit us in the back half of this year.

79.      On August 3, 2023, Tandem filed a Current Report on Form 8-K with the SEC attaching a press release announcing its second quarter 2023 financial results. In the press release, Tandem reported GAAP gross profit of $101.7 million, compared to $101.9 in the comparable period of 2022, and GAAP gross margin of 52%, compared to 51%. The Company also reported a GAAP operating loss of $38.8 million, or negative 20% of sales, compared to a previous operating loss of $12.2 million, adjusted EBITDA of $5.3 million, or 3% of sales, compared to $11.4 million, or 6% of sales, and a GAAP net loss of $35.8 million, compared to a net loss of $15.1 million in the second quarter of 2022.

80.      In the press release, Tandem revised its 2023 financial guidance for non-GAAP sales to at least $785 million, with sales in third quarter of at least $190 million, non-GAAP gross margin of approximately 51%, and an adjusted EBITDA margin that would at least breakeven as a percentage of sales.

81.      On the same day, on a conference call with financial analysts and investors, Defendant Sheridan discussed the Food and Drug Administration's approval of Tandem's new Mobi product, but stated it was "difficult to predict" the effect on sales for the remainder of the year due to the "pausing dynamic we've seen historically with new product launches between the time the FDA clears the product and its availability." Consequently, Defendant Sheridan noted that ***"in combination with an increasingly competitive environment worldwide***, we feel it's prudent to reset our 2023 guidance with

a low point for expectations and a starting baseline for 2024, while we focus on driving the business."

82.     Defendant Vosseller also commented on the revised guidance but confirmed that Tandem was "confident that even with these unusual demand dynamics, at a minimum, we can achieve worldwide sales of $190 million in the third quarter and $785 million for the full year."

83.     A financial analyst questioned the sudden guidance adjustment and the Company's approach to its 2023 guidance:

> I wanted to go back to the guidance adjustment and what you guys are factoring in today that you didn't have visibility on at the beginning of the year? Because if I go back and look, I mean, the timing of the Mobi approval seems pretty much in line with what you were assuming back when you first guided for '23. So why only now factor in this pause and why the big shift and how you think the back half of the year is going to play out? It's just difficult to anticipate what the revenue is going to be like in the back half.

84.     In response, Defendant Sheridan noted:

> It's just difficult to anticipate what the revenue is going to be like in the back half because of Mobi pausing … and then there is some competitive dynamics as well. So, it's just, I think, rather than try to guess, we're just taking a conservative approach with guidance, and we're just trying to risk reduce public expectations.

85.     On August 18, 2023, Tandem filed a Current Report on Form 8-K with the SEC announcing the resignation of Defendant Hansen, effective December 31, 2023. Defendant Hansen had been Tandem's CCO since 2016.

86.     On November 1, 2023, Tandem filed a Current Report on Form 8-K with the SEC attaching a press release announcing its third quarter 2023 financial results. In the press release, Tandem reported GAAP gross profit of $89.8 million, compared to $104.4 million and GAAP gross margin of 48%, compared to 51%. Tandem also reported a GAAP operating loss of $31.5 million, or negative 17% of sales and a GAAP net loss of $33.0 million. Tandem again revised downward its 2023 financial guidance for non-GAAP sales to "at least $765 million."

## SUBSEQUENT DEVELOPMENTS AND THE SECURITIES CLASS ACTION

87.     On November 13, 2023, Tandem filed a Current Report on Form 8-K with the SEC disclosing that David B. Berger ("Berger"), the Company's Chief Operating Offier, would be resigning from his position effective December 31, 2023. The Company provided no details regarding the circumstances behind Berger's resignation.

88.     On September 8, 2023, the Securities Class Action was filed. On February 1, 2024, an amended complaint was filed, including statements from confidential witnesses, and charging the named defendants with violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder. The Securities Class Action seeks damages on behalf of persons or entities who purchased Tandem securities between August 3, 2022, and November 2, 2022, inclusive. The lawsuit alleges that the defendants made false and misleading statements in Tandem's

public filings by concealing or materially downplaying the negative market conditions relating to competition and the pandemic faced by Tandem.

89.     According to confidential witnesses cited in the Securities Class Action amended complaint, in the summer of 2022, negative market conditions, including pandemic-related unemployment and competition were severely impacting the Company's sales. For example, Insulet Corporation and Medtronic PLC, two of Tandem's chief competitors, had already released or would soon be releasing new insulin pumps, which caused a downturn in the Company's target sales of its own insulin pumps. Further, according to these witnesses, Tandem's revenue projections during the second half of 2022 did not account for negative sales information being provided to the Company's sales team. One of the witnesses and other sales team members routinely warned Tandem's senior management that the sales quotas set by management were too high, given the adverse market conditions. Despite knowing that sales targets set for the third quarter of 2022 were unattainable, senior management did not change them. Indeed, one of the witnesses attested that senior management set arbitrary sales targets based on previous quarters.

**THE 2023 PROXY STATEMENT**

90.     On April 12, 2023, the Company filed its 2023 Proxy Statement with the SEC soliciting shareholder votes to, among other things, re-elect Defendants Sheridan, Blickenstaff, Cha, Howell, Malagueira, McGroddy-Goetz, and Twomey, and approve

executive compensation. The Proxy Statement was authorized by the Board and signed by Defendant Sheridan.

91.     The 2023 Proxy Statement represents that the Board oversees and monitors the Company's risk exposures:

> Management and our board of directors [assess] the Company's risk environment on at least a quarterly basis to ensure we are adequately anticipating future exposure to liability. The board…works closely with management, and outside advisors (as needed) on the identification, evaluation and management of short-, medium- and long-term risks to ensure they are prioritized on a timely basis. Risks are typically categorized based on the potential probability and severity of the risk and addressed or escalated as appropriate. Our risk assessment process aligns with our disclosure controls and procedures. When a board committee is responsible for evaluating and overseeing the management of particular risks, the chair of the relevant committee typically reports to the full board of directors during the next board meeting.

92.     The 2023 Proxy Statement represented that the Audit Committee engages in vigorous oversight over the adequacy of the Company's internal controls, including "reviewing and discussing the adequacy and effectiveness of our accounting and financial reporting processes and internal controls and the audits of our financial statements."

93.     The 2023 Proxy Statement represented that the Nominating and Corporate Governance Committee engages in robust oversight over risk and risk management including by "reviewing and assessing risk and risk management guidelines with respect to day-to-day operations," and "reviewing … governance risks and practices."

94.     The foregoing statements in the 2023 Proxy Statement were false and misleading and omitted material information. Contrary to the representations made in the 2023 Proxy Statement, the Board was required, but failed to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tandem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls.

95.     On May 26, 2023, Tandem filed a Current Report on Form 8-K with the SEC announcing, among other things, the re-election of Defendants Sheridan, Blickenstaff, Cha, Howell, Malagueira, McGroddy-Goetz, and Twomey, and the approval of executive compensation.

## DAMAGES TO TANDEM

96.     As a direct and proximate result of the Individual Defendants' misconduct, Tandem has expended and will continue to expend many millions of dollars.

97.     Such expenditures include, but are not limited to, legal fees, costs, and any payments for resolution or to satisfy a judgment associated with the Securities Class Action, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

98.    Such expenditures will also include costs incurred in any internal investigation pertaining to violations of law, costs incurred in defending any investigations or legal actions taken against the Company due to its violations of law, and payments of any fines or settlement amounts associated with the Company's violations.

99.    As a direct and proximate result of the Individual Defendants' conduct, Tandem has suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's actions and misrepresentations and the Individual Defendants' breaches of fiduciary duties.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

100.    Plaintiff brings this action derivatively in the right of and for the benefit of Tandem to redress injuries suffered, and to be suffered, as a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, violations of federal law, and other wrongful conduct as alleged herein.

101.    Tandem is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

102.    Plaintiff is an owner of Tandem stock and has been a continuous shareholder of Company stock at all relevant times.

103.   Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

104.   A pre-suit demand on the Board is futile and therefore, excused. At the time this suit was filed, the Board consisted of the following ten individuals: Defendants Sheridan, Robertson, Allen, Blickenstaff, Cha, Howell, Malagueira, McGroddy-Goetz, Sodhi, and Twomey (the "Director Defendants"). Plaintiff is required to show that five of the current members of the Board cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

105.   Each of the Director Defendants face a likelihood of liability in this action because they caused and/or permitted the Company to make false and misleading statements and omissions concerning the information described herein. Because of their advisory, managerial, and directorial positions within the Company, the Director Defendants had knowledge of material, non-public information regarding the Company and were directly involved in the operations of the Company at the highest levels.

106.   The Director Defendants either knew or should have known of the false and misleading statements and omissions that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that misconduct.

107.   Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and, with gross negligence, disregarded the wrongs complained of herein and are therefore not disinterested parties.

108.   Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements and omissions, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

109.   Additional reasons that demand upon Defendant Sheridan is futile follow. Defendant Sheridan has been the President and CEO of Tandem since 2019. Sheridan therefore is not independent. Indeed, Tandem's 2023 Proxy Statement concedes that Sheridan is not independent as it does not list Sheridan as an independent director. The Company provides Defendant Sheridan with his principal occupation from which he receives substantial compensation, as detailed above. Thus, Defendant Sheridan could not consider a demand for action that might require him to sue the directors who control his continued employment or fellow members of management with whom he works on a day-to-day basis. Defendant Sheridan is named as a defendant in the Securities Class Action. As such, he is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest. Moreover, according to the 2023 Proxy Statement, Defendant Sheridan and Defendant Vosseller have a

personal relationship and share a primary residence. Defendant Vosseller reports directly to Defendant Sheridan. As such, Defendant Sheridan is incapable of considering a demand to commence and vigorously prosecute this action with the required independence and disinterest. Defendant Sheridan signed the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded his duties to protect corporate assets. Defendant Sheridan is neither independent nor disinterested. Any demand upon Defendant Sheridan is futile and, thus, excused.

110.   Additional reasons that demand on Defendant Robertson is futile follow. The Company provides Defendant Robertson substantial compensation, as detailed above. Thus, Defendant Robertson could not consider a demand for action that might require her to sue the directors who control her continued employment. Defendant Robertson signed the 2020 10-K, the 2021 10-K, and the 2022 10-K, and approved the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor. As a trusted Company director, she conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded her duties to protect corporate assets.

Defendant Robertson is neither independent nor disinterested. Any demand upon Defendant Robertson is futile and, thus, excused.

111.   Additional reasons that demand on Defendant Allen is futile follow. The Company provides Defendant Allen with substantial compensation, as detailed above. Thus, Defendant Allen could not consider a demand for action that might require him to sue the directors who control his continued employment. Allen is personally involved with JDRF, a nonprofit diabetes research organization and served as Chairman of the International Board of Directors of JDRF. Tandem and JDRF have partnered on various diabetes-related initiatives since 2009.[2] Tandem is a national sponsor of JDRF TypeOneNation Summits, supports numerous local JDRF One Walks and Galas, and is a longstanding member of JDRF's Industry Advisory Panel.[3] In 2020, Tandem and JDRF announced a national partnership to help drive awareness and education on topics related to technological innovation, diabetes management, and healthcare for people with diabetes.[4] In 2021, Tandem donated between $250,000-$499,999 to JDRF.[5] Therefore, Allen is precluded from investigating or acting against the other members of Tandem's Board with the required independence and disinterest. Moreover, Defendant Allen signed the signed the 2020 10-K, the 2021 10-K, and the 2022 10-K, and approved the 2023

---

[2] https://www.jdrf.org/corporate-partners/tandemdiabetescare/.
[3] *Id.*
[4] https://www.jdrf.org/press-releases/jdrf-and-tandem-diabetes-care-partner-to-help-educate-andsupport-the-t1d-community/.
[5] https://www.jdrf.org/wp-content/uploads/2022/06/FY22DonorHonorRoll.pdf.

Verified Shareholder Derivative Complaint

Proxy Statement 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded his duties to protect corporate assets. Defendant Allen is neither independent nor disinterested. Any demand upon Defendant Allen is futile and, thus, excused.

112.    Additional reasons that demand on Defendant Blickenstaff is futile follow. Defendant Blickenstaff has been a Company director since 2007 and served as Tandem's President and CEO from September 2007 until March 2019. Blickenstaff therefore is not independent. Indeed, Tandem's 2023 Proxy Statement does not list Blickenstaff as an independent director. The Company provides Defendant Blickenstaff with substantial compensation, as detailed above. Thus, Defendant Blickenstaff could not consider a demand for action that might require him to sue the directors who control his continued employment. Further, Blickenstaff has a business relationship with Defendant Twomey which precludes him from acting in an independent and disinterested manner. Blickenstaff and Twomey worked closely together at Biosite Inc. ("Biosite") before joining the Tandem Board. Blickenstaff founded Biosite and served as Chair and CEO of the company from 1988 until its acquisition by Inverness Medical Innovations, Inc. in June 2007. During that time, Twomey held various positions with Biosite, most recently serving as Senior Vice President, Finance and CFO. Defendant Blickenstaff signed the

2020 10-K, the 2021 10-K, and the 2022 10-K, and approved the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded his duties to protect corporate assets. Defendant Blickenstaff is neither independent nor disinterested. Any demand upon Defendant Blickenstaff is futile and, thus, excused.

113.    Additional reasons that demand on Defendant Howell is futile follow. The Company provides Defendant Howell with substantial compensation, as detailed above. Thus, Defendant Howell could not consider a demand for action that might require her to sue the directors who control her continued employment. Defendant Howell signed the 2020 10-K, the 2021 10-K, and the 2022 10-K, and approved the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor. As a trusted Company director, she conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded her duties to protect corporate assets. Defendant Howell is neither independent nor disinterested. Any demand upon Defendant Howell is futile and, thus, excused.

114.    Additional reasons that demand on Defendant Malagueira is futile follow. The Company provides Defendant Malagueira with substantial compensation, as detailed

Verified Shareholder Derivative Complaint

above. Thus, Defendant Malagueira could not consider a demand for action that might require him to sue the directors who control his continued employment. Defendant Malagueira signed the 2022 10-K and approved the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded his duties to protect corporate assets. Defendant Malagueira is neither independent nor disinterested. Any demand upon Defendant Malagueira is futile and, thus, excused.

115.   Additional reasons that demand on Defendant McGroddy-Goetz is futile follow. The Company provides Defendant McGroddy-Goetz with substantial compensation, as detailed above. Thus, Defendant McGroddy-Goetz could not consider a demand for action that might require her to sue the directors who control her continued employment. Defendant McGroddy-Goetz signed the 2020 10-K, the 2021 10-K, and the 2022 10-K, and approved the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor. As a trusted Company director, she conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded her duties to protect corporate assets. Defendant McGroddy-Goetz is neither independent nor disinterested. Any demand upon Defendant McGroddy-Goetz is futile and, thus, excused.

116.   Additional reasons that demand on Defendant Sodhi is futile follow. The Company provides Defendant Sodhi with substantial compensation, as detailed above. Thus, Defendant Sodhi could not consider a demand for action that might require him to sue the directors who control his continued employment. Defendant Sodhi signed the 2020 10-K, the 2021 10-K, and the 2022 10-K, and approved the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded his duties to protect corporate assets. Defendant Sodhi is neither independent nor disinterested. Any demand upon Defendant Sodhi is futile and, thus, excused.

117.   Additional reasons that demand on Defendant Twomey is futile follow. The Company provides Defendant Twomey with substantial compensation, as detailed above. Thus, Defendant Twomey could not consider a demand for action that might require him to sue the directors who control his continued employment. Defendant Twomey signed the 2020 10-K, the 2021 10-K, and the 2022 10-K, and approved the 2023 Proxy Statement containing false and misleading statements and material omissions and faces a substantial likelihood of liability therefor.  Twomey has a business relationship with Defendant Blickenstaff which precludes him from acting in an independent and disinterested manner. Twomey and Blickenstaff worked closely together at Biosite before

joining the Tandem Board. Blickenstaff founded Biosite and served as Chair and CEO of the Company from 1988 until its acquisition by Inverness Medical Innovations, Inc. in June 2007. During that period, Twomey held various positions with Biosite, most recently serving as Senior Vice President, Finance and CFO. As a trusted Company director, he conducted little, if any, oversight of the Company's engagement to make false and misleading statements and consciously disregarded his duties to protect corporate assets. Defendant Twomey is neither independent nor disinterested. Any demand upon Defendant Twomey is futile and, thus, excused.

118. Moreover, Defendants Allen, Malagueira, and Twomey, as members of the Audit Committee, had duties regarding oversight of the risks facing the Company and Tandem's compliance with relevant laws, rules, and regulations. Defendants Allen, Malagueira, and Twomey, utterly failed to perform these essential duties.

119. Defendants Allen, McGroddy-Goetz, and Sodhi, as members of the Nominating and Corporate Governance Committee, had the duty, among others, to ensure the implementation and effectiveness of Tandem's corporate governance policies. Defendants Allen, McGroddy-Goetz, and Sodhi utterly failed to perform these duties.

120. The Director Defendants received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board. They have benefitted from the wrongs alleged herein and have engaged therein to preserve their positions of control and the prerequisites thereof and are

incapable of exercising independent objective judgment in deciding whether to bring this action.

121. The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Director Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

122. Publicly traded companies, such as Tandem, typically carry director and officer liability insurance from which the Company could potentially recover some or all of its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that will foreclose a recovery from the insurers if the Individual Defendants sue each other to recover the Company's damages. If no such insurance is carried, then the Director Defendants will not cause the Company to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event.

Verified Shareholder Derivative Complaint

123.   Accordingly, each of the Director Defendants, and at least a majority of them, cannot reasonably consider a demand with the requisite disinterestedness and independence. Indeed, any demand upon the Director Defendants is futile and, therefore, excused.

### COUNT I

**Against the Individual Defendants for Violations of
Section 10(b) of the Exchange Act and Rule 10b-5**

124.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

125.   The Individual Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

126.   The Individual Defendants, individual and in concert, directly or indirectly, disseminated or approved the materially false statements specified above, which they knew or deliberately disregarded to be misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

127.   The Individual Defendants employed devices, schemes and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and misleading statements of material facts and/or omitting to state

material facts necessary in order to make the statements made about Tandem not misleading.

128.   The Individual Defendants, as top executives and directors of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to and did control the conduct complained of herein and the content of the public statements disseminated by Tandem.

129.   The Individual Defendants acted with scienter during the Relevant Period, in that they either had actual knowledge of the scheme and the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were the top executives of the Company, or received briefings from them, and were therefore directly responsible for the scheme set forth herein and for the false and misleading statements and omissions disseminated to the public through press releases, conference calls, and filings with the SEC.

130.   As a result of the foregoing, the market price of Tandem common stock was artificially inflated during the relevant time period. In ignorance of the falsity of the statements, Plaintiff relied on the statements described above and/or the integrity of the market price of Tandem common stock in purchasing Tandem common stock at prices

that were artificially inflated as a result of the false and misleading statements and was damaged thereby.

131.   By virtue of the foregoing, the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

132.   Plaintiff on behalf of Tandem has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Breach of Fiduciary Duties

133.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

134.   Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Tandem's business and affairs.

135.   Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

136.   The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Tandem.

137.   In breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

138.   The Individual Defendants each further violated their fiduciary duties to Tandem and its stockholders by, among other things, failing to: (1) implement and maintain an effective system of internal controls to ensure that the Company was complying with all laws, rules, and regulations governing Tanem's core operations and making truthful, accurate, and complete statements regarding its core operations, financial condition, and business prospects; (2) effectively oversee and monitor the material risks facing the Company; and (3) investigate and take action when presented with red flags regarding misconduct or the lack of internal controls. As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Tandem has sustained and continues to sustain significant damages and its reputation has been irreparably damaged.

139.   The Individual Defendants failed to correct and/or caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

140.   The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the

Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

141.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

142.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

143.   As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Tandem has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

144.   Plaintiff on behalf of Tandem has no adequate remedy at law.

## COUNT III

**Against Defendants Sheridan, Vosseller, and Hansen for Contribution Under Section 21D of the Exchange Act**

145.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

146.   The conduct of Defendants Sheridan, Vosseller, and Hansen as described herein has exposed the Company to significant liability under various federal securities laws by their misconduct.

147.   Tandem and Defendants Sheridan, Vosseller, and Hansen are named as defendants in the related Securities Class Actions that allege and assert claims arising under the federal securities laws. Tandem is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein.

148.   If Tandem is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of Defendants Sheridan, Vosseller, and Hansen as alleged herein, who have caused the Company to suffer substantial harm through their

misconduct. Tandem is entitled to contribution and indemnification from Defendants Sheridan, Vosseller, and Hansen in connection with all claims that have been, are, or may be asserted against the Company by virtue of his wrongdoing.

149.     As officers and/or directors of Tandem, Defendants Sheridan, Vosseller, and Hansen had the power or ability to, and did, control or influence, either directly or indirectly, Tandem's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

150.     Defendants Sheridan, Vosseller, and Hansen are liable under §21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

151.     Defendants Sheridan, Vosseller, and Hansen have damaged the Company and are liable to the Company for contribution.

152.     As such, Tandem is entitled to receive all appropriate contribution or indemnification from Defendants Sheridan, Vosseller, and Hansen.

## COUNT IV

### Against the Individual Defendants for Aiding and Abetting the Breach of Fiduciary Duties

153.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

Verified Shareholder Derivative Complaint

154.     Each of the Individual Defendants has acted and is acting with knowledge of or with reckless, or grossly negligent, disregard to the fact that the Individual Defendants are in breach of their duties to the Company and have participated in such breaches of duties.

155.     In committing the wrongful acts, each of the Individual Defendants has pursued or joined in the pursuit of a common course of conduct. They have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided and abetted, and/or assisted, each other in breaching their respective duties.

156.     Because the actions described herein occurred under the Board's supervision and authority, each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

157.     Each of the Individual Defendants aided and abetted each other and rendered substantial assistance in the wrongs complained of herein.

## <u>COUNT V</u>

### Against the Individual Defendants for Waste of Corporate Assets

158.     Plaintiff incorporates by reference and realleges each and every re-allegation set forth above, as though fully set forth herein.

159.    As a direct result of their wrongdoing herein, the Individual Defendants have wasted Tandem's valuable corporate assets by, among other things, causing Tandem to pay excessive and improper compensation, fees, and salaries to Defendants who breached their fiduciary duties and by causing the Company to incur millions of dollars of legal liability or legal costs to defend Defendants' unlawful actions and to lose financing from investors and business from future customers who no longer trust Tandem and its products. As a result of the waste of corporate assets as alleged herein, the Individual Defendants damaged Tandem and as such are liable to Tandem for corporate waste.

## **PRAYER FOR RELIEF**

160.    WHEREFORE, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

A.    Declaring that Plaintiff may maintain this action on behalf of Tandem and that Plaintiff is an adequate representative of the Company;

B.    Declaring that the Individual Defendants violated Sections 10(b) and 21D of the Exchange Act;

C.    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Tandem;

D.    Directing the Company to take all necessary actions to reform and improve its internal controls and Board oversight;

E.      Determining and awarding to Tandem the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

F.      Ordering disgorgement of profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties;

G.      Awarding Tandem restitution from the Individual Defendants, and each of them;

H.      Awarding Plaintiff, the costs and disbursements of this action, including reasonable attorneys' fees, consultant fees, and experts fees, costs, and expenses; and

I.      Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: April 23, 2024                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By:  /s/ Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684

Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

Verified Shareholder Derivative Complaint

DocuSign Envelope ID: EA6BDCA0-1C55-4C25-B691-14A259CBC90D

## **<u>VERIFICATION</u>**

I, Amin Amersi am a plaintiff in the within action. I have reviewed the allegations made in this shareholder derivative complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.

<u>Amin Amersi</u>          4/10/2024